UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELE S.,

              Plaintiff,                    **DECISION AND ORDER**

    v.

                                                  20-CV-547-EAW

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Michele S. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 15; Dkt. 17). For the reasons discussed below, the Plaintiff's motion (Dkt. 15) is granted and the Commissioner's motion (Dkt. 17) is denied.

**BACKGROUND**

Plaintiff protectively filed her applications for DIB and SSI on February 28, 2017. (Dkt. 12 at 156-68).[1] In her applications, Plaintiff alleged disability beginning December 22, 2014. (*Id.* at 156, 163). Plaintiff's applications were initially denied May 18, 2017. (*Id.* at 63-64). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Paul Georger on January 8, 2018. (*Id.* at 33-62). On March 15, 2019, the ALJ issued an unfavorable decision. (*Id.* at 16-28). Plaintiff then requested review by the Appeals Council, which the Council denied on April 17, 2020, making the ALJ's determination the final decision of the Commissioner. (*Id.* at 1-5).

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b).[2] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

---

[2]  Because the DIB and SSI regulations mirror each other, the Court only cites the SSI regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e). The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920, and determined that Plaintiff met the insured status requirements of the Act through December 31, 2019. (Dkt. 12 at 18). At

step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since December 22, 2014, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: essential tremor in the hands and legs, obesity, post-traumatic stress disorder (PTSD), bipolar disorder, and borderline personality disorder. (*Id.*). The ALJ also found that Plaintiff did not have any non-severe impairments. (*Id*. at 18-19).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 19-20). The ALJ particularly considered the criteria of Listing 12.04 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work, except that she could occasionally climb stairs, ramps, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl, and occasionally work at unprotected heights, around moving mechanic parts, and operate a motor vehicle. (*Id*. at 20). The ALJ also determined that Plaintiff is able to perform simple, routine, and repetitive tasks, but not at a production rate pace, make simple work-related decisions, and occasionally interact with supervisors, coworkers, and the public. (*Id.*). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 26).

The ALJ determined that on September 25, 2018, Plaintiff's age category changed to an individual of advanced age. (*Id.*). He then proceeded to step five, where, relying on the testimony of a vocational expert ("VE"), the ALJ concluded that prior to September 25, 2018, there were jobs that existed in significant numbers in the national economy that

Plaintiff could perform, such as the occupations of cleaner/housekeeper, stock checker, and mailroom clerk. (*Id.* at 26-27). Accordingly, the ALJ determined that Plaintiff was not disabled from the alleged onset date through September 25, 2018, but then became disabled on September 25, 2018 through the date of his decision. (*Id.* at 27).

## II.   The Commissioner's Determination is not Supported by Substantial Evidence

Plaintiff advances several arguments in support of her position. (Dkt. 15-1 at 4-5).[3] She argues that the ALJ failed to properly evaluate the opinion evidence, particularly the opinions of her treating psychologist and counselor, and as such the ALJ arrived at the RFC that was not supported by the record. (*Id*. at 4). Because the Court agrees and remands this matter for further proceedings, it will not reach a decision on Plaintiff's remaining arguments.

It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 416.927(a)-(e); *see also Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984). The ALJ is required to consider medical opinions in his RFC assessment because they reflect judgments about

---

[3]    The Commissioner, mistakenly believing that Plaintiff had only raised one argument, failed to respond to all of the remaining arguments raised by Plaintiff. (Dkt. 17-1 at 7). While Plaintiff could have been more elaborate in articulating her arguments and referencing the record, the regulations, or the applicable caselaw in support of her position, the Commissioner was, nevertheless, required to respond to each of the Plaintiff's arguments. *See* L.R. Civ. P. 5.5(d)(1)(2).

the nature and severity of the claimant's impairments, and explain what the claimant can still do despite those impairments. 20 C.F.R. § 416.927(a).[4] Generally, the ALJ must defer to an opinion of a claimant's treating physician when formulating the claimant's RFC. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal and other citations omitted). It has been well-established that the medical opinion of the claimant's treating physician is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(a)(2), (c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted). If the ALJ determines that the opinion of a treating physician is not entitled to controlling weight, the ALJ must decide how much weight, if any, to give the opinion, and must comprehensively articulate his reasons for the weight assigned to it. *Halloran,* 362 F.3d at 32 (citations omitted). The ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). Those good reasons for the weight given to the treating physician's opinion must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

---

[4] On January 18, 2017, the SSA revised the rules regarding the evaluation of opinion evidence for claims filed after March 27, 2017, and changed the way the Commissioner considers medical opinion evidence and prior administrative medical findings. *See* 20 C.F.R. § 416.920c; 82 Fed. Reg. 5844. Because Plaintiff's applications were filed before the enactment of the new rules, the Court will apply the rules that were in effect at the time of her applications.

treating source's medical opinion and the reasons for that weight." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

Where a claimant suffers from mental impairments that prevent her from meeting the demands of her past relevant work, the ALJ is required to consider whether the claimant can perform unskilled work, and consider the basic mental demands of unskilled work, which include the abilities to understand, carry out, and remember simple instructions, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting on a sustained basis. *See* SSR 85-15, 1985 WL 56857, *4-5 (S.S.A. Jan. 1, 1985). Because response to the demands of work is highly individualized, and because a mentally-impaired individual may have difficulties adapting to the "demands of work (stress)" and "may have difficulty meeting the requirements of even so-called 'low-stress' jobs," the ALJ is required to make a thorough, individualized assessment of the individual's ability to perform mental demands of unskilled work. *Id.* at *5, 6; *see also Collins v. Colvin*, No. 15-CV-423-FPG, 2016 WL 5529424, at *3 (W.D.N.Y. Sept. 30, 2016).

Here, Plaintiff alleged disability due to depression, anxiety, fear of being around people, constant tremors in her arms and legs, obesity, racing thoughts, sleep apnea, inability to concentrate and follow instructions, and poor memory. (Dkt. 12 at 196-203). She was first diagnosed with depression and anxiety as a result of sexual abuse she suffered as a child, and later, as a young adult, was diagnosed with bipolar disorder. (*Id.*). Plaintiff indicated that tremors in her legs prevented her from standing for a prolonged period of time and shaking in her hands caused her to drop things. Her depression and obesity limited

her energy to do things and care for herself, and affected her memory and ability to concentrate. Plaintiff indicated that she was afraid to leave the house, and only did so as long as others knew where she was and expected her back so that she did not commit suicide. (*Id*. at 198). She had panic attacks twice a week that on average lasted between five and twelve hours. (*Id*. at 203). Plaintiff testified that she was fired from her last job as a manager of a veterans' homeless shelter in Florida because she was unable to make work-related decisions, was unprofessional, and could not keep her emotions under control. (*Id*. at 40-43, 52). Plaintiff also testified that her memory was impaired, and that she had auditory hallucinations, trouble concentrating, making decisions, understanding instructions, and relating to people. (*Id*. at 48, 53-54). Every month Plaintiff had manic depressive episodes that lasted between two to four days, during which Plaintiff would be awake and restless. (*Id*. at 53).

In formulating Plaintiff's mental RFC and determining that Plaintiff was able to perform simple, routine, and repetitive tasks with occasional interaction with supervisors, coworkers, and the public, the ALJ evaluated several medical opinions contained in the record.[5] (Dkt. 12 at 25-26). Specifically, the ALJ afforded substantial weight to the opinions of non-treating consultative examiner Dr. Ippolito, and non-treating and non-examining State agency psychiatric consultant Dr. Bruni, because both opinions were consistent with the record. (*Id*. at 25). The ALJ afforded partial weight to the opinion of

---

[5] Because Plaintiff argues that the ALJ inappropriately assigned weight to her mental health treating sources, the Court will only discuss the opinions contained in the record related to Plaintiff's mental functioning.

Plaintiff's treating psychiatrist Dr. Wolin because even though his findings and diagnoses were consistent with the record, the severity of Plaintiff's limitations identified by Dr. Wolin were inconsistent with the record. (*Id*. at 26).

The Court finds the ALJ's evaluation of the above opinion evidence problematic for several reasons. Among other reasons, it lacks the analysis of the regulatory factors, particularly the nature of the treating and examining relationship, which the ALJ was required to consider, and which could have led him to assign different weight to opinions of both consultative physicians. It has been well-recognized that "[i]n the context of a psychiatric disability diagnosis, it is improper [for the ALJ] to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." *Velazquez v. Barnhart*, 518 F. Supp. 2d 520, 524 (W.D.N.Y. 2007) (remand required where ALJ credited a psychiatric opinion "based on a review of a cold, medical record"); *see also Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability."). Therefore, without proper explanation of the reasons why the opinion of Dr. Bruni, a non-examining and non-treating physician, was afforded substantial weight and was consistent with the record, the ALJ's analysis was flawed. For the same reason, the Court finds the ALJ's evaluation of the opinion of Dr. Ippolito, a consultative physician who examined Plaintiff once at the request of the Commissioner, was improper. *See, e.g.*, *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) ("[A] one-time snapshot of a claimant's status may not be indicative of her

longitudinal mental health."); *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("We have previously cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination."). Consequently, the ALJ's cursory statement about consistency of Drs. Ippolito and Bruni's findings, diagnoses, and opinions with the record without proper application of the regulatory factors, and specific explanation of *why* their opinions were consistent with the record, "does not instill much confidence that the ALJ complied with th[e] regulatory provisions." *Drake v. Saul*, 839 F. App'x 584, 587 (2d Cir. 2020).

The ALJ's failure to explain the reasons for the substantial weight assigned to the consultative examiners was particularly troublesome in light of his evaluation of the opinions of Dr. Wolin, Plaintiff's treating psychiatrist, and Rachel Gill, LCSWR, Plaintiff's mental health therapist, who provided the only comprehensive analysis of Plaintiff's abilities to meet mental demands of competitive employment contained in the record.[6] (Dkt. 12 at 338-47; 363-70). The ALJ afforded Dr. Wolin's opinion partial weight and, like his evaluation of the consultative opinions, did not provide any specificity as to why Dr. Wolin's conclusions about Plaintiff's mental functioning were unsupported by the

---

[6] Even though Dr. Wolin did not complete his own independent evaluation of Plaintiff's mental functional abilities, and approved and co-signed the psychiatric report and RFC assessment completed by Plaintiff's therapist Rachel Gill (Dkt. 12 at 364-70), the opinion should have been assessed under the treating physician rule. *King v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 277, 282 (W.D.N.Y. 2018) ("[M]edical source statements cosigned by a treating physician should be evaluated as having been the treating physician's opinion.") (quotation omitted). The ALJ did not separately evaluate Rachel Gill's opinion, which should have been evaluated on key issues such as impairment severity and ability to work as an opinion of a non-acceptable medical source. *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008).

record. While the Court recognizes that the ALJ is not necessarily required to recite each factor, *see Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."), the ALJ's failure to explicitly consider the regulatory factors when evaluating Dr. Wolin's opinion was not harmless as it leaves the Court guessing about the exact evidence in the record with which Dr. Wolin's findings were inconsistent. 20 C.F.R. § 416. 927(c); *see, e.g.*, *Drake*, 839 F. App'x at 587 (the ALJ did not discuss the regulatory factors when he conclusory assigned "no weight" to the opinion of plaintiff's treating physician without providing any explanation as to why it was not supported by the evidence); *Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020) (conclusory assessments of the portions of the opinion or merely acknowledging the existence of a treating relationship is not the same as explicit consideration of the frequency, length, nature, and extent of treatment by a treating physician that the ALJ is required to discuss).

In November 2018, having treated Plaintiff for several years, Dr. Wolin and Rachel Gill opined that Plaintiff had marked difficulties holding a job, communicating clearly and effectively, responding to supervision and to those in authority, responding to strangers without fear, establishing relationships, and participating in group activities. (*Id*. at 338-41). They also opined that due to Plaintiff's depression with psychotic features, anxiety, PTSD, and borderline personality disorder, Plaintiff had marked limitations in activities of daily living, and extreme limitations in social functioning, concentration, persistence, and pace, and the ability to complete tasks in a timely manner. (*Id.* at 341-44). Dr. Wolin and

Rachel Gill also assessed Plaintiff with having severe limitations—the highest degree of impairment—in all her abilities to function in a work setting on a regular and continuous basis, such as the ability to understand, remember, and carry out instructions, respond to supervision and co-workers, satisfy normal quality, production, and attendance, respond to work pressures, and perform simple and complex tasks on a sustained basis. (*Id*.). Notably, in addition to filling out the check-box RFC assessment form, their opinion contains a two-page statement that describes each of the above limitations in more detail. (*Id*. at 345-47). Specifically, despite their continuous work with Plaintiff to improve her ability to perform daily tasks and independent functioning, she continued to struggle with meeting her basic needs and hygiene, taking care of herself, and staying on track even when performing simple daily activities. (*Id*.). Rachel Gill noted that as a result of her depression and PTSD, Plaintiff could not concentrate, often lost track of space and time, could not handle cooking, cleaning, or planning her activities, did not shower, comb her hair, or brush her teeth for a week at a time. She experienced fear and racing thoughts while shopping due to being fearful of people, and "froze" or intentionally withdrew from being around others so that she would not "snap." (*Id*.). Plaintiff, who had a master's degree, had nine jobs in 12 years, all of which resulted in termination of her services because she could not handle the mental demands of her jobs, could not accept supervision, was inappropriate and lacked boundaries with her supervisors and coworkers, made poor work-related decisions, decompensated while on the job, and had poor attendance as a result of her mental impairments. (*Id*.). Having lost her last job in Florida as a program manager at a

veterans' shelter, Plaintiff was homeless for a period of time until she returned to New York State to reside with her family. (*Id*. at 347).

In light of these findings, it is unclear how the ALJ determined that Plaintiff was able to perform any work on a regular and continuous basis regardless of how simple or routine Plaintiff's tasks would have been, let alone how that she could tolerate occasional interaction with supervisors, coworkers, and the public. While the Court recognizes that an RFC assessment may not perfectly correspond to one medical opinion, and the ALJ is entitled to weigh all of the evidence in the record to make the RFC finding, *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order), here, the ALJ did not make any specific findings about how Plaintiff's severe limitations in social functioning and in ability to function in a work setting impacted her ability to perform basic demands of unskilled work, or how even an occasional interaction with supervisors, coworkers, and the public could potentially trigger Plaintiff's symptoms. *Cooley v. Berryhill*, 6:16-CV-06301-EAW, 2017 WL 3236446, at *12 (W.D.N.Y. July 31, 2017) (it was insufficient to limit plaintiff to simple, routine, repetitive tasks with no interaction with the public, and occasional interaction with supervisors and coworkers without expressly analyzing plaintiff's ability to manage stress of the workplace). Because "an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons." *See* SSR 85-15, 1985 WL 56857 at *5. Therefore, it is unclear how even the occasional interaction with supervisors could accommodate Plaintiff's inability to respond appropriately to

supervision and respond to work pressures that were identified by Dr. Wolin and Rachel Gill. (*Id*. at 344). Plaintiff reported being fearful of people and struggling to keep a job due to her inability to control her emotions, make work-related decisions, accept supervision, and be appropriate with her supervisors. Even though the record demonstrates that Plaintiff sometimes experienced improvement of her bipolar disorder symptoms, depression, and anxiety following her intake of psychotropic medications, and had a relatively unremarkable examinations, it also contains evidence that she was unable to care for herself or her needs, and experienced episodic transient suicidal ideations, auditory and visual hallucinations, preoccupied and constricted thoughts, depression, agitation, hypervigilance, rigid posture, and rapid speech. Notably, both consultative physicians, whose opinions the ALJ afforded significant weight, determined that Plaintiff had moderate limitations in her ability to make work-related decisions, adequately interact with supervisors, coworkers, and the public, and marked limitations in the ability to regulate emotions, control her behavior, and maintain well-being. (Dkt. 12 at 322-23, 331).

In sum, because the ALJ failed to properly evaluate the opinion evidence contained in the record and, as a result, arrived at an RFC finding that was not supported by substantial evidence, the matter should be remanded for further proceedings. Because the Court has determined that remand of this matter for further administrative proceedings is necessary, the Court declines to reach a decision on Plaintiff's remaining arguments. *See, e.g.*, *Bell v. Colvin*, 5:15-CV-01160 (LEK), 2016 WL 701739, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already

determined remand was warranted); *Morales v. Colvin*, 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 15) is granted, and the Commissioner's motion for judgment on the pleadings (Dkt. 17) is denied. The matter is remanded for further proceedings consistent with this decision. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     September 15, 2021
           Rochester, New York